UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN LEE JAYE,

    *Plaintiff*,

v.                                  CASE NO. 10-CV-12732

COMMISSIONER OF              DISTRICT JUDGE STEPHEN J. MURPHY, III
SOCIAL SECURITY,               MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.    REPORT

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

insurance benefits (DIB). This matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 16.)

Plaintiff was 47 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 5, at 14, 82.) Plaintiff's employment history includes work as a security gate guard for 4 years and as an assembly line worker for 10 years. (Tr. at 102.) Plaintiff filed the instant claim on July 10, 2007, alleging that she became unable to work on October 13, 2006. (Tr. at 82.) The claim was denied at the initial and administrative stages. (Tr. at 33.) In denying Plaintiff's claim, the Commissioner considered degenerative disc disease and shoulder impingement as possible bases of disability. (*Id.*) Plaintiff requested a hearing before an administrative law judge on August 16, 2007. (Tr. at 41-42.)

On August 6, 2009, Plaintiff appeared before Administrative Law Judge ("ALJ") B. Lloyd Blair, who considered the application for benefits *de novo*. (Tr. at 4-13.) In a decision dated September 25, 2009, the ALJ found that Plaintiff was not disabled. (Tr. at 13.) Plaintiff requested a review of this decision on September 25, 2009. (Tr. at 66-74.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on May 5, 2010, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-3.) On July 9, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is

multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("[d]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of

3

disability.""). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

without directly addressing in his written decision every piece of evidence submitted by a party");

*Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving [her] entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). "[Benefits] are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.     ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff last met the insured status requirements through December 31, 2011, and had not engaged in substantial gainful activity from the alleged onset date of October 13, 2006. (Tr. at 9.) At step two, the ALJ found that Plaintiff's degenerative disc disease of the cervical and lumbar spine, cervical/lumbar radiculopathy, degenerative joint changes and impingement of the left shoulder were "severe" within the meaning of the second sequential step. (Tr. at 9-10.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 11.) At step four, the ALJ found that Plaintiff could perform her past relevant work as a gate guard. (Tr. at 12-13.) Alternatively, at step

five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 11-12.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 13.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff has been treated for back pain since 2003. An MRI of the lumbar spine taken on July 23, 2003, showed "central disc bulges at the L3-L4, L4-L5, and L5-S1 levels consistent with changes of degenerative disc disease" but "no evidence of disc herniation, spinal stenosis or compromise of the exiting nerve roots." (Tr. at 147.)

An MRI of the lumbar spine performed on August 17, 2006, showed "stable appearance of the lumbar spine when compared to prior study of July 23, 2003. Mild degenerative changes are seen." (Tr. at 144.) On August 31, 2006, Timothy Izzo, D.O., wrote a "Patient Excuse" stating that Plaintiff was to engage in "[n]o repetitive lifting, no lifting over the shoulder height, and no lifting greater than 5 lbs until further notice" at work. (Tr. at 155.)

Plaintiff was referred to Christopher J. Abood, M.D., of Lansing Neurosurgery and on November 16, 2006, he discussed "different treatment options" and "recommended continuing with the therapy." (Tr. at 137, 152-54.)

An MRI of the shoulder and scapula taken on January 18, 2007, showed "supraspinatus tendinopathy," "prominent degenerative changes at the acromioclavicular joint with some minimal impingement of the supraspinatus musculotendinous junction," and "subcortal cystic changes of the greater tuberosity." (Tr. at 142.)

On February 1, 2007, Timothy Izzo, D.O., wrote a letter on behalf of Plaintiff stating that she "is still in physical therapy and attempting to avoid surgery as recommended in October.

7

Permanent restrictions for Karen Jaye are as follows: (1) No repetitive bending, twisting, lifting or prolonged standing [and] (2) No greater lifting than 5 lbs." (Tr. at 151.)

A Physical Residual Functional Capacity (RFC) assessment completed on August 8, 2007, concluded that Plaintiff is able occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday (with periodic alternation between sitting and standing to relieve pain or discomfort) and was limited in her ability to push or pull with her left arm due to left shoulder injury. (Tr. at 158.) The assessment also concluded that Plaintiff was frequently limited in her ability to balance and occasionally limited in the remaining postural areas. (Tr. at 159.) In the manipulative area, Plaintiff was found to be unlimited except for being limited to occasional overhead reaching with her left arm. (Tr. at 160.)  There were no visual or communicative limitations established. (Tr. at 160-61.) As to environmental limitations, there were none except to avoid even moderate exposure to vibration. (Tr. at 161.) The assessment concluded that Plaintiff was "partially credible" due to her daily function report and because:

> the medical evidence shows only slight limitations. Her symptoms have improved since she is no longer working/standing on cement all day. The medical evidence does not support the degree of limitations alleged by the claimant. She has full strength and good motion of spine and shoulder. Her gait is normal.

(Tr. at 162.) The assessment noted that a treating source statement by Dr. Izzo from February 2007 stated that Plaintiff should be limited to occasional bending/twisting at waist, occasional foot pedals, lifting and pushing or pulling of a maximum of five pounds. (Tr. at 163.) The assessment noted that these restrictions had no expiration date and that they "will be taken into consideration but not given controlling weight [because] [t]he medical evidence from Dr. Abood, neurological specialist, indicates no such need for such extreme limitations." (*Id.*)

8

An MRI of the cervical spine taken on October 9, 2007, found "mild degenerative disc disease changes at C4-C5 causing narrowing of the intervertebral neural foramina bilaterally. MRI of the cerival spine is, otherwise, unremarkable with no evidence for disc herniation, cord compression or canal stenosis." (Tr. at 166.)

Plaintiff was referred to Jeffrey R. Levin, M.D., F.A.A.N., in September 2007 for a neurological examination. (Tr. at 171-72.) At that time, Dr. Levin diagnosed Plaintiff with left shoulder impingement with tendonopathy, probable C6-7 radiculopathy on the left, commonly seen in patients with rotator cuff impingement, and L4-5 radiculopathy on the left. (Tr. at 172.) On November 8, 2007, Dr. Levin diagnosed C5 radiculopathy on the right with acute denervation, C6-C7 radiculopathy bilaterally, L4-L5 radiculopathy, right greater than left, with acute denervation seen at the L4 level. (Tr. at 169.) On June 23, 2008, Dr. Levin diagnosed Plaintiff with cervical and lumbar radiculopathy and left shoulder impingement and continued Plaintiff on the "same regimen of medications" and indicated that "[p]hysical therapy may be helpful." (Tr. at 167.)

An MRI of the lumbar spine taken on March 10, 2009, showed "disc protrusions and degenerative changes at L3-L4 and L4-L5 level, in which the protrusion at the L3-L4 level abuts the traversing left L4 nerve root" and that "exam is grossly stable when compared to the prior study from August 2006." (Tr. at 174.)

On May 28, 2009, Dr. Izzo completed a form indicating that Plaintiff is totally disabled from any occupation and that she will never be able to resume any work. (Tr. at 175.)

Plaintiff indicated in her daily activity report that she is able to take care of her own personal hygiene needs (although her husband helps her put her shoes and socks on), "play w/ bird," make simple things to eat, take care of her dogs, watch television, dust, drive a car, ride in

a car, shop in stores once a week, manage her own finances, and talk on the phone with others. (Tr. at 109-14.) She also indicated that she does not use any aids to ambulate. (Tr. at 115.)

At the administrative hearing, Plaintiff testified that she has never been given shots for her pain nor has she ever undergone surgery. (Tr. at 22.) The ALJ asked the vocational expert ("VE") to assume a person with Plaintiff's background who:

> can meet the demands of light work who should never use ladders, scaffolds or ropes, should only occasionally use ramps, stairs, stoop, kneel, crawl. Should avoid even moderate exposure to vibrations, should only occasionally reach above the head with left upper extremity.

(Tr. at 30.) When asked whether such a person could perform Plaintiff's past relevant work as a gate guard, the VE responded in the affirmative. (Tr. at 30-31.) When the ALJ asked whether such a person could perform the job as gate guard if a sit/stand at will option was added to the above limitations, the VE again responded that such a person could perform the job of gate guard. (Tr. at 31.)

### F.   Analysis and Conclusions

#### 1.   Legal Standards

The Commissioner's regulations state that the agency "will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. § 416.960(b). "If you can still do this kind of work, we will find that you are not disabled." 20 C.F.R. § 404.1520(f). "'By referring to the claimant's ability to perform a "kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than [her] ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

In determining the level of exertion required by prior work, the testimony of the VE should be compared to the Dictionary of Occupational Titles ("DOT"). *Bauer v. Barnhart*, 168 Fed. App'x 719 (6th Cir. 2006). Simply asking the VE if his testimony is consistent with the DOT satisfies the requirements under Social Security Regulation 00-4p. *Martin v. Comm'r of Social Security*, 170 Fed. App'x 369, 375-76 (6th Cir. 2006).

Alternatively, the ALJ determined that during the time she qualified for benefits, Plaintiff possessed the residual functional capacity to perform a limited range of light work. (Tr. at 11-12.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner and instead asserts that the decision is "contradicted by the evidence." (Doc. 11.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff contends that the ALJ "erred as a matter of law by determining that Ms. Jaye could return to her past relevant work and by forming an inaccurate hypothetical that did not accurately portray Ms. Jaye's impairments." (Doc. 11 at 6.) Plaintiff also contends that ALJ did not give proper weight to the opinion of Plaintiff's treating physician, Dr. Izzo, and treating neurologist, Dr. Levin. (Doc. 11 at 7-12.)

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). *See also Rogers*, 486 F.3d at 242 (stating that the "treating physician rule," which provides that "greater deference is usually given to the opinions of treating physicians than to those of non-treating physicians," is a key governing standard in social security cases).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." S.S.R. 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions

and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

I note at the outset that Dr. Izzo's conclusion Plaintiff is totally disabled from any occupation and that she will never be able to resume any work (Tr. at 175) is not entitled to any deference since "[i]t is well settled that the ultimate issue of disability is reserved to the Commissioner." *Kidd v. Commissioner*, 283 Fed. App'x 336, 341 (6th Cir. 2008); *Gaskin v. Commissioner*, 280 Fed. App'x 472, 475-76 (6th Cir. 2008). I further suggest that the ALJ's decision to not give controlling weight to Dr. Izzo's underlying opinion was proper because it was not well-supported and was inconsistent with other substantial evidence in the record. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2).

Dr. Izzo, on February 1, 2007, wrote that Plaintiff was subject to the "permanent restrictions [of] (1) [n]o repetitive bending, twisting, lifting or prolonged standing [and] (2) [n]o greater lifting than 5 lbs." (Tr. at 151.) However, the RFC assessment in August 2007 questioned both Plaintiff's credibility and Dr. Izzo's opinion because the 2007 restrictions had no expiration date and because "the medical evidence from Dr. Abood, neurological specialist, indicates no such need for such extreme limitations." (Tr. at 163.) The assessment also noted that "[t]he medical evidence shows only slight limitations [and that] [h]er symptoms have improved . . . ." (Tr. at 162.) It concluded that the "medical evidence does not support the degree of limitations alleged by the claimant." (Tr. at 162.)

MRIs of Plaintiff's spine did not reveal a rapid degeneration. An MRI of the lumbar spine taken on July 23, 2003, showed "central disc bulges at the L3-L4, L4-L5, and L5-S1 levels consistent with changes of degenerative disc disease" but "no evidence of disc herniation, spinal stenosis or compromise of the exiting nerve roots." (Tr. at 147.) Three years later in August 2006, an MRI of the lumbar spine showed "stable appearance of the lumbar spine when compared to prior study of July 23, 2003. Mild degenerative changes are seen." (Tr. at 144.) Yet, despite merely mild changes, in that same month Dr. Izzo wrote a "Patient Excuse" stating that Plaintiff was unable to do repetitive lifting and six months later in February 2007 Dr. Izzo imposed the drastic restrictions discussed above. (Tr. at 151, 155.) In October 2007, an MRI of the cervical spine found only "mild degenerative disc disease changes at C4-C5" and was otherwise "unremarkable with no evidence for disc herniation, cord compression or canal stenosis." (Tr. at 166.) An MRI of the lumbar spine taken on March 10, 2009, was "grossly stable when compared to the prior study from August 2006." (Tr. at 174.) Despite these findings showing mild change and stable conditions, on May 28, 2009, Dr. Izzo concluded that Plaintiff is totally disabled from any occupation and that

she will never be able to resume any work. (Tr. at 175.) I suggest that Dr. Izzo's findings do not comport with the objective medical evidence.

In addition, as noted by the ALJ, Plaintiff did not undergo any surgery, did not use injection modalities, or treat with a pain clinic during the relevant period. (Tr. at 12, 22.) None of Plaintiff's physicians proposed aggressive treatments. Dr. Abood "recommended continuing with the therapy" in 2006. (Tr. at 137, 152-54.) Even as of June 23, 2008, Dr. Levin recommended continuing Plaintiff on the "same regimen of medications" and indicated that "[p]hysical therapy may be helpful." (Tr. at 167.) *See Myatt v. Comm'r of Social Security*, 251 Fed. App'x 332, 334-35 (6th Cir. 2007) (modest treatment regimen consisting only of pain medication is inconsistent with a finding of total disability).

I therefore conclude that since Dr. Izzo's opinion was inconsistent with other substantial evidence in the record, the ALJ properly chose not to give controlling weight to Dr. Izzo's opinion. *Wilson*, *supra*.

I further suggest that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessment (Tr. at 30, 158-81) and that the hypothetical was in harmony with the objective record medical evidence and Plaintiff's own statements that she retains the ability to take care of her own personal hygiene needs, "play w/ bird," make simple things to eat, take care of her dogs, watch television, dust, drive a car, ride in a car, shop in stores once a week, manage her own finances, talk on the phone with others, and ambulate without the use of any aids. (Tr. at 109-15.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice

15

within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ *Charles E Binder*
CHARLES E. BINDER
Dated: June 14, 2011                                      United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  June 14, 2011                         By     s/Patricia T. Morris
                                                   Law Clerk to Magistrate Judge Binder